**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

PETER BADRY,                                          Case No.
    Plaintiff,
                                                     Hon.
vs.

HENRY FORD COLLEGE,
    a Michigan public college.

_____

**COMPLAINT AND JURY DEMAND**

Plaintiff, Peter Badry, by and through his attorneys, Hubbard Snitchler & Parzianello, PLC, states as follows for his complaint against Defendant Henry Ford College:

**INTRODUCTION**

1.    This is an employment discrimination and retaliation suit.

2.    Plaintiff Peter Badry ("Mr. Badry") is highly accomplished professor who performed exceptionally at his job at Henry Ford.

3.    Mr. Badry's work was widely praised for his performance by Henry Ford.

4.    Despite this performance, Mr. Badry, a Muslim U.S. Citizen of Egyptian descent, national origin and religion, was passed over for course assignments promotion in favor of less successful Caucasian peers.

5.     As these discriminatory actions occurred, Mr. Badry sought the help of Henry Ford Human Resources, to no avail.

6.     Mr. Badry brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., the Elliott-Larsen Civil Rights Act, MCL § 37.210 *et seq.,* and Michigan common law to remedy the illegal and unethical employment discrimination and retaliation perpetrated against him.

## PARTIES, JURISDICTION AND VENUE

7.     Plaintiff Peter Badry is an individual who resides in Wayne County, Michigan

8.     Defendant Henry Ford College ("Henry Ford") is a two-year community college organized under MCL 380.5 that serves the Dearborn Public School district and surrounding areas offering associates degrees, certificates, continuing education and business and industry training. Henry Ford is funded by tuition and fees, state allocations, and millages authorized by the district.

9.     At the time of his termination, Mr. Badry was employed at Henry Ford's campus in Dearborn, Michigan located in this judicial district.

10.    Jurisdiction is proper in this Court under 42 U.S.C. § 2000e-5(f)(3), 28 U.S.C. § 1331, and 28 U.S.C. § 1343(a)(4).

11.    Jurisdiction over supplemental state law claims is proper under 28 U.S.C. § 1367, as they arise from the same case and controversy.

2

12.     Venue is proper in this Court under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391 as this is the judicial district in which the unlawful employment practices occurred and the relevant employment records are kept.

13.     Mr. Badry filed charges of national origin discrimination, and religious, discrimination and retaliation against Defendant Henry Ford with the Detroit Field Office of the Equal Employment Opportunity Commission (EEOC) in July 2018.

14.     The EEOC issued a Right to Sue letter to Mr. Badry dated September 27, 2018.

15.     Mr. Badry received the Right to Sue letter on October 1, 2018.

## STATEMENT OF FACTS

16.     Mr. Badry is an U.S. citizen of Egyptian descent.

17.     Mr. Badry is a practicing Muslim-American.

18.     Henry Ford is a well-known college that has its campus in Dearborn, Michigan.

19.     Mr. Badry was an Adjunct Instructor at Henry Ford for 17 years teaching in the School of Business, Entrepreneurship and Professional Development ("BEPD").

20.     Mr. Badry has taught classes both on campus and online.

21. Mr. Badry holds two master's degrees; a Master of Business Administration and a Master of Arts in Economics both earned with honors from the University of Detroit-Mercy.

22. In April 2008, Mr. Badry established a $10,000 scholarship, the El-Sayed and Hoda El-Badry Endowed Scholarship, at Henry Ford.

23. Mr. Badry is well respected as a professor throughout Southeast Michigan.

24. Aside from Henry Ford, Mr. Badry has taught college classes over the last 25 years at Schoolcraft College, Wayne County Community College District, Davenport University, Macomb Community College, Oakland Community College, Montcalm Community College, Abha College of Technology and Baker College.

25. Through agreement between Mr. Badry and Henry Ford, Mr. Badry was assigned courses according to his seniority by hours taught, as is required with all Henry Ford professors.

26. In April of 2018, addressed with Dr. Nealon several serious issues with the assignment of classes and the qualification of adjunct instructors.

27. Mr. Badry advised that Henry Ford's actions were not in compliance with the requirements of the Higher Learning Commission ("HLC").

28. Henry Ford failed to take remediating actions.

29.    Beginning in the Summer of 2017, the Henry Ford failed to assign courses in accordance with the seniority requirements of existing union agreements as well as with its agreement with Mr. Badry.

30.    Beginning in the Summer of 2017, Mr. Badry was not assigned courses according to seniority by hours taught, as is required at Henry Ford.

31.    Mr. Badry was also mistakenly qualified to only teach Economics, when in fact, Mr. Badry taught other Business courses at Henry Ford and was qualified to teach them.

32.    In the Summer of 2017, Henry Ford wrongfully passed over Mr. Badry for teaching assignments on two classes, in favor of Kurtis Hall, a probationary status employee and a Caucasian male.

33.    In the Fall of 2017, Mr. Badry was given teaching assignments for three classes online, two which were coded as BEC 152 and one which was coded as BEC 133.

34.    The BEC 133 course was scheduled to start on Oct 19, 2017.

35.    To Mr. Badry's surprise, the BEC 133 course was cancelled by Mr. James on August 24, 2017.

36.    On September 7, 2017, Mr. Badry resigned from the Adjunct Faculty Organization, according to Public Act 53, Michigan's Right-to -Work Law.

37. In the Winter semester of 2018, Mr. Badry was wrongfully only assigned one course.

38. Mr. Badry called Ms. Lynn Borczon, Assistant Director of Human Resources, and informed her of his assignment for Winter 2018.

39. Ms. Borczon advised that she spoke to Henry Ford's Dean Chatman about this issue.

40. Mr. Robert James, Henry Ford's Associate Dean, called Mr. Badry on November 14, 2017 and promised to send Mr. Badry his new schedule for Winter 2018, with corrected assignments.

41. James never contacted Mr. Badry again and failed to correct the assignments.

42. In Winter 2018, both Mr. Hall and Mr. William Wilson, both who had less seniority than Mr. Badry, were assigned two courses, whereas Mr. Badry was assigned one.

43. Mr. Badry was the senior adjunct faculty in the Economics Department at that time.

44. In Spring of 2018, Mr. Badry was assigned two classes.

45. In the Summer of 2018, Mr. Badry was assigned two classes.

46. Subsequently, Henry Ford implemented a new way of assigning courses, not by seniority in the subject, but by seniority in the school of BEPD.

47. Henry Ford also wrongfully listed Mr. Badry's qualifications as only being qualified to teach Economics while Mr. Michael Trohimczyk documented himself as being in the Economics Department but is not qualified to teach Economics.

48. On March 26, 2018, Mr. Badry spoke to Mr. James by telephone to discuss how to remedy these improprieties.

49. Instead of remedying this situation, Mr. Badry was not assigned any courses for Spring or Summer of 2018 which were instead assigned to Caucasian males.

50. Upon information and belief, no other non-Muslims or Caucasians were subject to the same treatment as Mr. Badry.

51. Mr. Badry designed four courses for Henry Ford that Mr. Badry was not compensated for during his tenure there.

52. Mr. Badry designed and launched the first online Macro and Micro Economics courses for Henry Ford.

53. In 2010, Mr. Badry designed two new courses for Henry Ford; BFN 253 Principles of Finance and International Business BBA 250.

54. Mr. Badry wrote the syllabi, chose the books and launched these classes online.

55. While Mr. Badry was not compensated for doing this as Henry Ford agreed, other Caucasians were paid for their similar efforts.

56. Mr. Badry is an Arab American Muslim whereas the individuals given improper preference are Caucasian.

57. Henry Ford's failures in not assigning courses in accordance with the requirements of the HLC is discriminatory against Mr. Badry due to his religion and national origin.

## COUNT I
## NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 42 U.S.C §2000e-2(a)(1)

58. Plaintiff herein reincorporates its allegations in the paragraphs above.

59. At all relevant times, Plaintiff was an employee, and Defendant Henry Ford was his employer under the definitions contained in Title VII, 42 U.S.C. § 2000e(b),(f).

60. At all relevant times, Defendant Henry Ford engaged in interstate commerce and employed more than 15 or employees and is thus subject to the requirements of Title VII.

61. Plaintiff is an American of Egyptian descent and a member of a protected group based on his national origin.

62. Defendant Henry Ford unlawfully discriminated against Plaintiff because of his national origin.

63.     Plaintiff was subjected to adverse employment actions during his tenure at Henry Ford.

64.     As a direct and proximate result of Defendant Henry Ford's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation.

65.     Defendant Henry Ford's conduct was with malice and recklessly indifferent to Plaintiff's federally protected rights, entitling him to punitive damages.

## COUNT II
## RELIGIOUS DISCRIMINATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 42 U.S.C § 2000e-2(a)(1)

66.     Plaintiff herein reincorporates its allegations in the paragraphs above.

67.     At all relevant times, Plaintiff was an employee, and Defendant Henry Ford was his employer under the definitions contained in Title VII, 42 U.S.C. § 2000e(b),(f).

68.     At all relevant times, Defendant Henry Ford engaged in interstate commerce and employed more than 15 or employees and is thus subject to the requirements of Title VII.

69.     Plaintiff is a member of a protected group based on his Muslim religion.

70. Defendant Henry Ford unlawfully discriminated against Plaintiff because of his religion.

71. Plaintiff was subjected to adverse employment actions during his tenure at Henry Ford.

72. As a direct and proximate result of Defendant Henry Ford's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation.

73. Defendant Henry Ford's conduct was with malice and recklessly indifferent to Plaintiff's federally protected rights, entitling him to punitive damages.

**COUNT III**
**RETALIATION IN VIOLATION OF**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 42 U.S.C § 2000e-3(a)**

74. Plaintiff herein reincorporates its allegations in the paragraphs above.

75. At all relevant times, Plaintiff was an employee, and Defendant Henry Ford was his employer under the definitions contained in Title VII, 42 U.S.C. § 2000e(b),(f).

76. At all relevant times, Defendant Henry Ford engaged in interstate commerce and employed more than 15 or employees and is thus subject to the requirements of Title VII.

77. Plaintiff engaged in protected activity under Title VII by opposing Defendant Henry Ford's discrimination and harassment perpetrated against him on the basis of his religion and national origin, including by contacting Henry Ford representatives.

78. Because he engaged in this protected activity, Plaintiff was not assigned courses to teach.

79. As a direct and proximate result of Defendant Henry Ford's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation.

80. Defendant Henry Ford's conduct was with malice and recklessly indifferent to Plaintiff's federally protected rights, entitling him to punitive damages.

## COUNT IV
## NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF
## THE ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2202(1)(a)

81. Plaintiff herein reincorporates its allegations in the paragraphs above.

82. At all relevant times, Plaintiff was an employee, and Defendant Henry Ford was his employer under the definitions contained in ELCRA, MCL 37.2201(a).

83. Plaintiff is an American of Egyptian descent and a member of a protected group based on his national origin.

84.    Defendant unlawfully discriminated against Plaintiff because of his national origin.

85.    Plaintiff was subjected to adverse employment actions during his tenure.

86.    As a direct and proximate result of Defendant's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation.

## COUNT V
## RELIGIOUS DISCRIMINATION IN VIOLATION OF
## THE ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2202(1)(a)

87.    Plaintiff herein reincorporate its allegations in the paragraphs above.

88.    At all relevant times, Plaintiff was an employee, and Defendant Henry Ford was his employer under the definitions contained in ELCRA, MCL 37.2201(a).

89.    Plaintiff is a member of a protected group based on his Muslim religion.

90.    Defendant Henry Ford unlawfully discriminated against Plaintiff because of his religion.

91.    Plaintiff was subjected to adverse employment actions during his tenure.

12

92. As a direct and proximate result of Defendant's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation.

## COUNT VI
## RETALIATION IN VIOLATION OF
## THE ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2701

93. Plaintiff herein reincorporates its allegations in the paragraphs above.

94. Defendant Henry Ford is a corporate entity defined as a person as defined in MCL 37.2103(g).

95. Plaintiff repeatedly engaged in conduct protected by ELCRA's antiretaliation provision including, contacting Henry Ford representatives to remedy the issues described above.

96. Defendant unlawfully retaliated against Plaintiff because of his protected conduct.

97. Plaintiff was subjected to adverse employment actions during his tenure.

98. As a direct and proximate result of Defendant's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and retirement benefits;

mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation.

## COUNT VII
## TERMINATION IN VIOLATION OF
## MICHIGAN PUBLIC POLICY

99. Plaintiff herein reincorporates its allegations in the paragraphs above.

100. At all times relevant to this suit, Defendant Henry Ford was Plaintiff's Employer.

101. The State of Michigan has a strong public policy against discrimination and retaliation on the basis of religion and national origin, as evidenced by the Elliott-Larsen Civil Rights Act, MCL 37.2101 and other legislative and administrative enactments.

102. Defendant failed to properly assign courses to Plaintiff because of his national origin and religion, and because of his opposition to the discrimination on these unlawful bases.

103. In so doing, Defendant violated clearly-defined Michigan public policy.

104. As a direct and proximate result of Defendant's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation.

## COUNT VIII
## BREACH OF CONTRACT

105.  Plaintiff herein reincorporates its allegations in the paragraphs above.

106.  Plaintiff and Defendant agreed that Plaintiff would be provided teaching assignments according to his seniority as described above.

107.  Plaintiff and Defendant also agreed that in the event Plaintiff developed courses for Defendant, Plaintiff would be compensated for such development.

108.  Defendant breached its contract with Plaintiff by failing to assign courses to be taught by Plaintiff as agreed.

109.  Defendant breached its contract with Plaintiff by failing to compensate Plaintiff for developing courses as agreed.

110.  As a direct and proximate result of Defendant's wrongful acts, Plaintiff has sustained monetary damages.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

(a) Lost wages and benefits in an amount to be proved at trial;

(b) Compensatory damages in an amount to be proved at trial, including compensation for the emotional and physical toll of the abusive treatment Plaintiff faced during his tenure at Henry Ford;

(c) Exemplary damages;

(d) Punitive damages;

(e) Attorneys' fees and costs;

(f) Prejudgment interest; and,

(h) Such other and further relief as the Court deems just and proper.

/s/ Eric A. Parzianello
Eric A. Parzianello (P42797)
Sean P. Murphy (P79255)
HUBBARD SNITCHLER & PARZIANELLO PLC
Attorneys for Plaintiff
801 W. Ann Arbor Trail, Suite 240
Plymouth, MI 48170
313.672.7300
eparzianello@hspplc.com
smurphy@hspplc.com

## DEMAND FOR TRIAL BY JURY

Plaintiff, by and through his counsel, hereby demands a trial by jury as to all those issues so triable as of right.

/s/ Eric A. Parzianello
Eric A. Parzianello (P42797)
Sean P. Murphy (P79255)
HUBBARD SNITCHLER & PARZIANELLO PLC
Attorneys for Plaintiff
801 W. Ann Arbor Trail, Suite 240
Plymouth, MI 48170
313.672.7300
eparzianello@hspplc.com
smurphy@hspplc.com