UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER BADRY,

Plaintiff,

v.

HENRY FORD COLLEGE,

Defendant.

______________________________/

Case No. 18-14064

SENIOR U. S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
ANTHONY P. PATTI

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [21]**

Plaintiff Peter Badry, a Muslim, Egyptian-American, is a part-time adjunct professor at Defendant Henry Ford College. Plaintiff claims that starting in the Summer 2017 semester, Defendant's seniority and class assignment system discriminated against him when he was passed over for class assignments in favor of white professors with less seniority. Plaintiff alleges the following claims: (1) discrimination on the basis on national origin and religion, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1991) ("Title VII") and Michigan's Elliot Larsen Civil Rights Act, MCL § 37.2101 *et seq.* (1992) ("ELCRA"), (2) retaliation in violation of Title VII and ELCRA, and (3) breach of contract.

Before the Court is Defendant's Motion for Summary Judgment [21] filed on February 4, 2020. Plaintiff filed a Response [22] on February 24, 2020. Defendant filed a Reply [23] on March 9, 2020. The Court held a hearing on the Motion [21] on September 16, 2020. For the reasons stated below, the Court **DENIES in part** and **GRANTS in part** Defendant's Motion for Summary Judgment [21].

## FACTUAL BACKGROUND

Plaintiff Peter Badry is an adjunct professor at Defendant Henry Ford College. He has been teaching economics and business courses in Defendant's School of Business and Entrepreneurship and Professional Development since 2000. (ECF No. 21-2, PageID.208). Since 2002, Plaintiff has taught 145 classes, 9 of which were in person, the rest were taught online. (ECF No. 21-3). Plaintiff last taught an in-person class in 2016. (*Id.*). Although prior to 2016 Plaintiff preferred teaching online, he then stated in an email in March 2016 and again in an email and a teaching request form in February 2018 that he is willing and available to teach both in-person and online courses. (ECF No. 22-10); (ECF No. 22-12).

### a) Seniority and Class Assignments

Under the controlling collective bargaining agreements ("CBAs") between the College and the Adjunct Faculty Organization ("Union"), classes are assigned in accordance with seniority. Seniority is calculated by awarding one service point per

weekly contact hour. (ECF No. 21-8, PageID.337). Adjunct part-time faculty are given preference over probationary faculty. (*Id.* at 339). Probationary faculty are defined as professors who have taught for less than eight semesters. (ECF No. 21-9, PageID.416). Adjunct professors can teach a maximum of nine credit hours, which translates to three economics courses. (ECF No. 21-6, PageID.309); (ECF No. 21-7, PageID.316).

Under the 2011 and 2013 CBAs, full time faculty were assigned to classes first. (ECF No. 21-8, PageID.339). Then senior adjuncts, in order of seniority, were offered a similar number of contact hours as what they had taught in the corresponding semester of the previous academic year, if available. (*Id.*). Once all of a Department's senior adjunct had been offered classes, classes were then offered to qualified probationary employees. (*Id.*). If there are still unassigned classes after all qualified probationary employees had been offered classes, senior adjunct faculty were again offered unassigned classes based on seniority. (*Id.*). The CBAs state that "reasonable effort will be made to offer a similar schedule or to accommodate reasonable changes to the schedule taught previously." (*Id.*).

Under the 2011 and 2013 CBAs, seniority was calculated within each discipline. This changed under the 2017 CBA. The 2017 CBA instead calculated seniority based within each School in the College, each of which contained several

disciplines. (ECF No. 21-10, PageID.439). In the Winter 2017 semester, Plaintiff was the most senior adjunct economics professor with 479 points. (ECF No. 22-2). In Fall 2018, Plaintiff was the eleventh most senior adjunct professor in the School of Business and Entrepreneurship and Professional Development ("BEPD") with 494 points. (ECF No. 22-3).

However, Plaintiff contests his latter ranking for two reasons. First, he claims that the most senior full-time economics professor and eighth senior professor in BEPD, Michael Trohimczyk, was not qualified to teach economics and therefore his seniority points from his economics courses should not have counted. *See* (ECF No. 22-3, PageID.492). Second, Plaintiff claims that the College did not include his seniority points from his business courses. Defendant claims that it did not include points from Plaintiff's business courses, because he has not taught a business class in the past five years and under the CBA, classes not taught within the last five years are not included in seniority points. (ECF No. 21-8, PageID.378). Defendant's assertion is incorrect though. A review of Plaintiff's course list history shows that he last taught a business class in the Winter 2017 semester, which should increase Plaintiff's point total, however, it is not clear that his ranking would succeed Trohimczyk's 627 points. (ECF No. 22-3, PageID.492).

Class assignments also changed under the 2017 CBA. Instead of being offered classes, adjunct professors would be able to select classes from a list of remaining open classes after full time faculty schedules had been confirmed. (ECF No. 21-9, PageID.420). Selections are made in order of seniority. (*Id.*). The system also requires adjunct faculty to call the Associate Dean of their School at a specified time to confirm their class schedule. (*Id.*). The new class assignment system was implemented on a pilot basis for the Spring 2018 semester. (*Id.*).

**b) Summer 2017 Semester**

Despite being the most senior adjunct economics professor, Plaintiff was not assigned any courses for the Summer 2017 semester. (ECF No. 22-7). Defendant claims that this was due to the return on Dr. Paul Fisher to the full-time faculty. This meant that the College had three full-time economics professors who each had priority for class assignments over adjunct professors. (ECF No. 21-11). There was, however, an available in-person class that Defendant assigned to a probationary professor, Kurtis Hale, instead of Plaintiff. (ECF No. 22-7). At the time, Kurtis Hale had just over 21 points, while Plaintiff had at least 479 points. (ECF No. 22-2). Kurtis Hale is white. (ECF No. 22-5, PageID.507). Defendant claims that this course was given to Hale rather than Plaintiff, because Plaintiff preferred online courses.

**c) Fall 2017 Semester**

Plaintiff was assigned to three online courses during the Fall 2017 semester. (ECF No. 21-12). However, one of his courses was cancelled by Associate Dean Robert James before it began. (*Id.*). Defendant claims that this cancellation was an accident and that Plaintiff's class was only one of a group of fifty to sixty classes which were mistakenly cancelled prematurely due to lack of enrollment. (ECF No. 21-12); (ECF No. 21-5, PageID.296, 301-02). Defendant claims that they corrected the mistake by offering Plaintiff another class, but Plaintiff was only assigned to two courses that semester. (*Id.*); (ECF No. 22-7).

**d) Winter 2018 Semester**

Plaintiff states that he was assigned to one online class, while two white probationary professors, Kurtis Hale and William Wilson, had two and three classes, respectively. (ECF No. 22-11, PageID.560); (ECF No. 22-7); (ECF No. 22-5, PageID.507). Plaintiff then complained to the Assistant Director of Human Resources, Lynn Borczon. (ECF No. 22-11, PageID.560). She told Dean James about the issue, who then told Plaintiff that he would receive a new schedule. (*Id.*). Plaintiff claims that this never occurred, although the class list shows he taught two courses during the Winter 2018 semester. (ECF No. 21-12); (ECF No. 22-7). Defendant again claims that Plaintiff was originally passed over, because he

preferred to teach online courses and Hale and Wilson were assigned to in-person courses. (ECF No. 21-11).

**e) Spring/Summer 2018 Semester**

Plaintiff was not assigned any courses in for the Spring/Summer 2018 semester. (ECF No. 22-7). Under the new collective bargaining agreement, Plaintiff was required to call Dean Robert James at 9:50 a.m. on March 26, 2018 to select courses. (ECF No. 22-11, PageID.561); (ECF No. 22-12); (ECF No. 22-14, PageID.577). When Plaintiff called Dean James, he complained that Michael Trohimczyk was improperly assigned to an economics course. (ECF No. 22-11, PageID.555, 561-62). Plaintiff claims that James got "very hostile," "treated [him] like a second grader," and "disrespectful [him]." (*Id.*). Plaintiff then, without selecting any courses, ended the phone call to take his complaints to a "higher authority" (*Id.*). James, however, claims that although Plaintiff complained about the ranking system, Plaintiff also indicated that he would not be teaching in the Spring/Summer 2018 semester, which he relayed immediately in an email to Ms. Borczon. (ECF No. 22-13). Plaintiff alleges that he was not assigned any classes this semester in retaliation of his complaints.

**f) Formal Complaint**

On April 2, 2018, Plaintiff sent a memorandum to the College's Vice President of Academics, Dr. Michael Nealon, to detail his complaints regarding the course assignments. (ECF No. 21-12). Plaintiff claimed that since the Summer 2017 semester, the College had not assigned his courses in accordance with the CBAs and that its actions amounted to discrimination against him based on religion and national origin. (*Id.*). Lynn Borczon investigated Plaintiff's claims by speaking to College officials who assign courses. (ECF No. 21-11). She concluded there was not any merit and repeated Defendant's claims that he was passed over because of his online course preference. (*Id.*). Plaintiff is still employed at the College but has not taught a class since Winter 2018. (ECF No. 22-11, PageID.561).

**LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56 (a). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Additionally, the Court views all of the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Anderson*, 477 U.S. at 255.

## ANALYSIS

Plaintiff pleads discrimination and retaliation under Title VII and ELCRA. Courts analyze ELCRA discrimination and retaliation claims under the same test used for Title VII discrimination and retaliation suits. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 771, 775 (6th Cir. 2018) ("'We review claims of alleged race discrimination [and retaliation] brought under § 1981 and the Elliott-Larsen Act under the same standards as claims of race discrimination brought under Title VII.'") (quoting *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999)) ("[plaintiff] also brought retaliation claims pursuant to § 1981, Title VII, and Michigan's Elliott-Larsen Civil Rights Act. . . These claims are all analyzed under the same standard."). Therefore, the Court's ruling on Plaintiff's Title VII claims are dispositive of his ELCRA claims.

**I. Discrimination**

When indirect circumstantial evidence is alleged to support a Title VII discrimination claim, the *McDonnell Douglas Corp.* burden-shifting framework is used. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *see also Whitaker v. U.S. Sec. Assocs., Inc.*, 774 F. Supp. 2d 860, 867 (E.D. Mich. 2011). This framework contains three steps. First, Plaintiff must establish a *prima facie* case of discrimination. *Whitaker*, 774 F. Supp. 2d at 867 (citing *Taylor v. Modern Engineering, Inc.,* 252 Mich. App. 655, 659 (2002)). Second, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for taking adverse action against Plaintiff. *Id*. Third, "if Defendant meets this burden of production, Plaintiff then has the opportunity to prove that the legitimate reason offered by the defendant was not the true reason, but was only a pretext." *Id*. Pretext is established when the proffered reason: "'(1) ha[d] no basis in fact; (2) did not actually motivate the [adverse employment] action; or (3) [was] insufficient to warrant the [adverse employment] action.'" *Brown v. Kelsey-Hayes Co.*, 814 F. App'x 72, 80 (6th Cir. 2020) (quoting *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 858 (6th Cir. 2018)).

To establish a prima facie case of employment discrimination, Plaintiff must demonstrate that he: (1) is a member of a protected class; (2) was qualified for the job; (3) suffered an adverse employment decision; and (4) was replaced by a person

outside the protected class or treated differently than similarly situated non-protected employees. *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008). Because it is undisputed that Plaintiff is a member of a protected class, was qualified for the courses he was not assigned to, and that those courses were given instead to white professors with less seniority, Defendant does not contest that Plaintiff has made a prima facie showing of discrimination.

Defendant only argues that it has a legitimate, non-discriminatory reason for not assigning available in-person classes to Plaintiff: he preferred online classes and the CBA requires it to offer Plaintiff a similar schedule each semester. The Court finds, however, that Plaintiff has shown that this "legitimate non-discriminatory reason" is pretextual, because it has no basis in fact.

First, the CBA does not require Defendant to offer a similar previous schedule. It states that "reasonable effort will be made to offer a similar schedule or to accommodate reasonable changes to the schedule taught previously." (ECF No. 21-8, PageID.339). This provision merely implores Defendant to offer professors similar classes to what they have already taught so that their semesters do not widely vary. In fact, the CBA's provisions emphasize the seniority of senior adjunct faculty members, with no mention of stated class preference. It states that only when "*all of* a Department's senior adjunct have been offered classes" will classes then be

"offered to qualified probationary employees." (*Id.*). And if there are still unassigned classes after all qualified probationary employees have been offered classes, senior adjunct professors are then again offered unassigned classes based on seniority. (*Id.*). Defendants have not pointed to any provision in the CBA that prevented them from at least offering in-person courses to Plaintiff.

Second, even if such a provision were in place, Plaintiff, on numerous occasions, indicated to Defendant that he was willing and available to teach in person classes. In fact, the faculty coordinator, William Barber, who is in charge of scheduling classes, states that in March 2016, Plaintiff sent him an email regarding his class schedule. (ECF No. 22-9, PageID.525, 532-33); (ECF No. 22-10). In this email, Plaintiff indicated his willingness and ability to teach both online and on campus. (*Id.*). Barber stated the following in his deposition: "this was a communication that he initiated to me letting me know that he wanted to teach on campus as well, [this was a] change from what he expressed in the past." (ECF No. 22-9, PageID.532-33). Defendant claims that this email was only for one course and not a change in Plaintiff's preferences, but Barber states otherwise. He notes that he interpreted the email as Plaintiff "notifying [him] that hey I'm willing to teach on campus now." (*Id.*). Moreover, Plaintiff again explicitly stated his willingness to teach both online and in-person classes through an email sent in February 2018 and

on a Teaching Request Form for the Spring/Summer 2018 semester. (ECF No. 22-12).

Because the CBA does not require Defendant to strictly follow any prior stated faculty class preference and Plaintiff communicated to Defendant on multiple occasions that he was willing and able to teach on-campus courses, there is a genuine dispute of fact as to whether Defendant's reason for not assigning Plaintiff to in-person classes is pretextual. Summary judgment on Plaintiff's discrimination claims is denied.

**II. Retaliation**

Title VII's antiretaliation provision protects employees who make discrimination complaints. *Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 59-60 (2006) (citing 42 U.S.C § 2000e-3(a)). ELCRA similarly prohibits retaliation "against a person because the person has opposed a violation of this act." MICH. COMP. LAWS § 37.2701 (a).

Because Plaintiff points to circumstantial evidence to support his allegations, this claim also follows the *McDonnell Douglas* burden shifting framework. *Funk v. City of Lansing, Michigan*, 821 F. App'x 574, 582 (6th Cir. 2020). A prima facie Title VII retaliation claim requires a plaintiff to show: "(1) [he] engaged in a protected activity; (2) [his] 'exercise of such protected activity was known by the

defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action.'" *Rogers*, 897 F.3d at 775 (quoting *Laster v. City of Kalamazoo,* 746 F.3d 714, 730 (6th Cir. 2014)).

Here, Defendant disputes the fourth element: causal connection. Defendant claims that Plaintiff's protected activity, his April 2, 2018 formal complaint, had no connection to not being assigned courses in Spring/Summer 2018. Defendant's argument fails, because it incorrectly identifies the protected activity in question. Plaintiff claims that his relevant protected activity was his March 26, 2018 phone call with Dean James. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000) (stating that protected activity includes "complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices.").

During this call, Plaintiff complained about Defendant's discriminatory practices. Shortly after the call, James emailed Assistant Director of HR, Lynn Borczon, and told her that "Plaintiff was upset about something and would not teach in Spring/Summer 2018." (ECF No. 22-13). He went on to say that it was "hard to understand him but he said something about HLC and racist scheduling." (*Id.*). As a result, Plaintiff was not assigned any classes for the Spring/Summer 2018 semester.

James's email to Human Resources creates a clear temporal and but-for causal connection to the adverse action of no class assignments. *Rogers*, 897 F.3d at 776-77 ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation.") (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)). In *Seeger v. Cincinnati Bell Tel. Co.,* the court collected a series of cases which held that a two to three-month time lapse between a plaintiff's protected activity and the a materially adverse action is sufficient temporal proximity to show a causal connection between the two. 681 F.3d 274, 283–84 (6th Cir. 2012). Here, even more so, Defendant's adverse action occurred only minutes after Plaintiff's complaint. (ECF No. 22-14, PageID.577 (call occurred on March 26, 2018 at 9:50 a.m.)); (ECF No. 22-13, PageID.574 (email was sent on March 26, 2018 at 10:45 a.m.)). Plaintiff has therefore established a prima facie retaliation.

Defendant's proffered legitimate non-retaliatory reason for not assigning Plaintiff to classes is because Plaintiff did not want to teach in the Spring/Summer 2018 semester. Plaintiff does not deny this. In fact, Plaintiff's only response to this proffered non-retaliatory reason is that James was disrespectful to him. However,

even if all of Plaintiff's allegations about James' actions on the phone call are true, one crucial fact is undisputed: Plaintiff chose not to select courses for the Spring/Summer 2018 semester. James then, operating under the honest belief that Plaintiff did not want to teach for the upcoming semester, relayed this information to HR. *See Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707–08 (6th Cir. 2006) (explaining that under the Sixth Circuit's "honest belief rule" an employer can "avoid a finding that its claimed nondiscriminatory reason was pretextual" by establishing its "reasonable reliance on the particularized facts that were before it at the time the decision was made" (quoting *Smith v. Chrysler Corp.,* 155 F.3d 799, 806 (6th Cir. 1998))). Further, Plaintiff has failed to point to any evidence that Defendant's proffered reason "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Rogers*, 897 F.3d at 777 (quoting *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 597 (6th Cir. 2007)). Considering that there is no dispute that Plaintiff did not select courses for the Spring/Summer 2018 semester, summary judgment on Plaintiff's retaliation claim is granted.

## III. Breach of Contract

Plaintiff pleads breach of contract for (a) Defendant's failure to properly rank him on the adjunct faculty seniority list, and (b) Defendant's failure to compensate

him for creating two new online courses in 2010. Defendant moves for summary judgment on the first claim, because Plaintiff did not exhaust his grievance remedies through the CBA, and on the second claim, because 2010 is beyond the statute of limitations. The Court grants summary judgment on both grounds.

"An employee seeking remedy for an alleged breach of a labor contract must attempt to exhaust the grievance and arbitration procedures established by the collective bargaining agreement before seeking relief in federal court." *Lovely v. Aubrey,* 188 F.3d 508 (6th Cir. 1999). However, courts may excuse a plaintiff's failure to exhaust contractual remedies "when the plaintiff can show that it would have been futile to pursue the outlined course of redress, or when the union has breached its duty of fair representation." *Id*. The Sixth Circuit requires a "'clear and positive showing' that resort to contractual remedies would have been in vain before excusing a plaintiff's failure to invoke the grievance procedures as set forth in a collective bargaining agreement." *Id; see also Sankar v. Detroit Bd. of Educ.*, 160 Mich. App. 470, 474 (1987) (Recognizing another exception to exhaustion: "where a plaintiff is seeking remedies not created under the labor contract.").

Plaintiff argues that his lack of exhaustion should be excused, because he is not a union member, making the grievance process and any possible arbitration "unworkable" for him. However, under the CBA, the Union is required to represent

all employees regardless of membership. Specifically, it states that the "Union agrees to maintain its eligibility to represent all Employees by continuing to admit persons to membership without discrimination and to represent all Employees equally, regardless of membership in any employee organization." (ECF No. 21-9, PageID.410). Furthermore, the CBA states that it includes "all non-casual part-time instructional staff teaching credit-awarding courses," which indisputably includes Plaintiff. (ECF No. 21-8, PageID.323). Plaintiff neither attempted to initiate the grievance process nor has proven that doing so would have been futile. Therefore, his breach of contract claim regarding seniority rankings is dismissed for lack of exhaustion.

Plaintiff's breach of contract claim for Defendant's failure to compensate him in 2010 is also dismissed for falling outside of the six-year statute of limitations. M.C.L. § 600.5807(8) ("The period of limitations is 6 years for an action to recover damages or money due for breach of contract."). Moreover, because Plaintiff fails to address the statute of limitations defense in his response brief, the Court considers the lack of compensation claim to be abandoned. *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("[t]his Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.").

## CONCLUSION

For the reasons stated above, the Court **DENIES in part and GRANTS in part** Defendant's Motion for Summary Judgment [21]. This ruling has the effect of dismissing Plaintiff's Title VII and ELCRA retaliation claim and breach of contract claim. Plaintiff's discrimination claim under Title VII and ELCRA remains live.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [21] is **DENIED in part** and **GRANTED in part**.

**SO ORDERED**.

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: March 30, 2021